IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY M. MILNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:19cv799-MHT |
| | ) | (WO) |
| THE CITY OF MONTGOMERY, | ) | |
| ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff Anthony M. Milner is a former lieutenant of Montgomery Fire/Rescue service, a division of the City of Montgomery, Alabama.  He filed this lawsuit after he was terminated when he became deaf in one ear.  He names as defendants the City of Montgomery, Montgomery Fire/Rescue, and four city officials.  He claims that they violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112, 12203, by failing to make reasonable accommodations for his disability and by discharging him in retaliation for requesting such accommodations.  He also brings a separate claim under 42 U.S.C. § 1983 for

the same alleged violations of the ADA.[1]  The court has jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

This case is now before the court on defendants' motion to dismiss.  Defendants have moved to dismiss (1) all claims against Montgomery Fire/Rescue, arguing that it is not a government entity distinct from the City of Montgomery; (2) three of the four individual defendants, on the ground that the individual employees are not subject to liability under, presumably, the ADA;[2] (3)

---

1.  Milner also includes a separate count for "injunctive relief."  The court understands this count to seek injunctive remedies in addition to the damages he requests on his ADA and § 1983 claims.

2.  Defendants actually seek dismissal of these three defendants on the ground that "individual employees are not subject to liability under Title VII," Motion to Dismiss (doc. no. 12) at 2.  This is, on its face, an odd argument because no count of Milner's complaint is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a and 2000e through 2000e-17.  However, the court understands defendants' position on this point to be directed at Milner's ADA claims, as the ADA borrows from Title VII the "powers, remedies, and procedures" it employs.  42 U.S.C. § 12117(a).

Milner's ADA claims, for failure to file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and failure to allege retaliation in his EEOC charge; and (4) Milner's § 1983 claims, as foreclosed by the ADA.  For the reasons that follow, the motion will be granted, and Milner's complaint will be dismissed.

## I.   FACTUAL BACKGROUND

Based on the allegations of the complaint, during the period at issue, Milner worked as a lieutenant in the Montgomery Fire/Rescue service, a division of the City of Montgomery.  He was placed on sick leave in July 2017 for a tumor affecting his hearing.  After surgery, he lost hearing in his left ear entirely.  He requested an accommodation for this hearing loss and was refused. When a doctor employed by Montgomery Fire/Rescue declined to approve his return to work, the city's mayor signed a memorandum, indicating his "decision to dismiss Fire Lieutenant A.M. Milner from employment with the

3

Montgomery Fire Department," effective July 2, 2018. Termination Documents (doc. no. 12-2) at 5.  Milner was given notice of his dismissal on July 5, 2018.  *See id.* at 3.  Milner appealed his dismissal to the city's personal department and lost, effective October 26, 2018. He filed a charge of discrimination with the EEOC on March 28, 2019.  *See* Complaint (doc. no. 1) at ¶ 47. After the EEOC denied his charge as untimely, *see* EEOC Documents (doc. no. 12-1) at 1, he brought the present suit.


## II. STANDARD ON MOTION TO DISMISS

Defendants frame their motion as being brought entirely under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*,

**4**

550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Defendants' argument that Milner's ADA claims should be dismissed for failure to exhaust administrative remedies, however, does not come under Rule 12(b)(6): "[M]otions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). Instead, failure to exhaust is considered "a matter of judicial administration." *Id.* Although the Eleventh Circuit Court of Appeals has held that exhaustion issues may be raised in a motion to dismiss and decided at that stage of the litigation, the court's consideration of the arguments regarding exhaustion are not subject to the same limitations about what factual material may be considered as apply to Rule 12(b)(6) motions. *See id.* at 1375-76.

Therefore, the documents related to Milner's dismissal and EEOC charge that are attached to defendants' motion to dismiss are proper for the court to review at this juncture. When deciding a motion to dismiss for failure to exhaust, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376. Milner had opportunities to bring forward facts supporting his claim on the question of exhaustion both in response to the motion to dismiss and in a separate filing on the issue ordered by the court. *See* Order (doc. no. 19).

III. DISCUSSION

As described above, defendants challenge the inclusion of Montgomery Fire/Rescue and three of the city officials as defendants in this suit, and they argue that Milner's ADA claims should be dismissed for failure to

6

exhaust and his § 1983 claims should be dismissed as precluded by the ADA.  Because the court agrees with defendants that Milner has failed to exhaust his ADA claims and that his § 1983 claims are precluded, it need not consider the arguments regarding the status of Montgomery Fire/Rescue or the amenability of the individual defendants to suit.


### A.   ADA Claims

Defendants argue that Milner failed to file his charge of discrimination with the EEOC within the timeframe allowed by the ADA; if this is true, it would bar his suit.  *See Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001).[3]

_____

3.  They also argue that Milner's ADA retaliation claim should be dismissed because he failed to allege retaliation in the charge he ultimately filed with the EEOC. The court does not reach this argument because it dismisses Milner's ADA claims for failure to file a timely EEOC charge.

Milner counters that the deadline to file his EEOC charge did not elapse until April 2019 because his termination was not final until his appeal through the City's personnel department concluded in late October 2018. *See* Complaint (doc. no. 1) at ¶¶ 27, 29, & 31. And he says that, even if the deadline did run before he filed his charge in March 2019, he should be allowed discovery before dismissal on whether the deadline should be tolled "by either the City's own administrative procedure or by virtue of the EEOC being shut down for the federal government shutdown." Response to Motion to Dismiss (doc. no. 18) at 5-9. Finally, he says that tolling the deadline is appropriate because he "was informed that termination of his employment was not final" until the internal appeals process resolved. Complaint (doc. no. 1) at ¶ 29. After the court requested additional information on this issue, Milner explained that he was "told by General Sams (Director of Public Safety) in a conversation in his office that my termination was not final until the appeal process was

completed, and that if the appeal process was successful, my employment could possibly be fully reinstated." Affidavit of Anthony Milner (doc. no. 20-1) at 2.

In general, in the absence of certain circumstances not applicable here, plaintiffs suing under the ADA for unlawful employment practices must file charges with the EEOC within 180 days of the practice of which they complain. *See Maynard*, 256 F.3d at 1262. "The 180-day period is counted from the date the employee receives *notice* of termination." *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1201 (11th Cir. 2003). The pursuit of internal appeals or grievance procedures does not toll this time limit. *See Stafford v. Muscogee Cty. Bd. of Educ.*, 688 F.2d 1383, 1388 (11th Cir. 1982); *see also Jordan v. City of Montgomery*, 283 F. App'x 766, 768 (11th Cir. 2008) (finding that appeal of city employee through Montgomery personnel board did not toll EEOC charge-filing deadline); *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) ("[T]he pendency of a grievance, or some other method of collateral review of an

employment decision, does not toll the running of the limitations periods.").

Milner received notice of his termination in July 2018. He was told to return his equipment, and his dismissal was reflected in payroll. *See* Termination Documents (doc. no. 12-2) at 2-3. The 180-day clock to file his charge with the EEOC began to run at that point. His appeal through the city's personnel department did not toll the running of this limitations period. *See Jordan*, 283 F. App'x at 768.

If no reason exists to extend this period, his deadline for filing an EEOC charge came and went in late December 2018 (180 days from July 2, 2018, the effective date of his termination) or very early January 2019 (180 days from July 5, 2018, when he received notice of his termination), several months before he filed his charge. Milner asks the court to extend his filing window under the doctrine of equitable tolling, which applies when a claimant "untimely files because of extraordinary circumstances that are both beyond his control and

unavoidable even with diligence." *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 846 (11th Cir. 2013) (quoting *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006)). Equitable tolling "is an extraordinary remedy which should be extended only sparingly." *Chang v. Carnival Corp.*, 839 F.3d 993, 996 (11th Cir. 2016) (quoting *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993)). "[I]t is the plaintiff's burden to show that equitable tolling is warranted." *Id.*

Milner has not shown the extraordinary circumstances necessary for equitable tolling to apply. Before his deadline ran in late December 2018 or early January 2019, the complaint alleges that his counsel did two things: "began attempts to use the EEOC's online portal in order to file a charge of discrimination," and "telephoned the Birmingham, Alabama, office of the EEOC and held for 52 minutes before being instructed by an EEOC representative in Birmingham to use the EEOC portal to schedule an appointment for an in-person or telephone interview for [Milner]." Complaint (doc. no. 1) at ¶¶ 33-34. It is

11

undisputed that Milner or his counsel could have submitted his EEOC charge by mail regardless of the availability of the online portal.  *See* 29 C.F.R. § 1601.8 (2018) ("A charge may be made in person or by mail at any office of the Commission or with any designated representative of the Commission.").  The failure to do so does not meet Milner's initial burden to show that he exercised due diligence in pursuing his claim, "a necessary, though not sufficient, prerequisite that a plaintiff must satisfy."  *Chang*, 839 F.3d at 996.

Milner argues that his ability to timely file was impacted by the shutdown of the federal government between December 22, 2018, and January 25, 2019.  *See* Complaint (doc. no. 1) at ¶ 32.  But the shutdown did not prevent him from filing his charge: "The EEOC accepted charges during this time to preserve individuals' rights under the law."  *What You Should Know About the Impact of the Lapse in Appropriations on EEOC Timelines*, Equal Emp.                    Opportunity                    Comm'n, https://www.eeoc.gov/wysk/what-you-should-know-about-im

pact-lapse-appropriations-eeoc-timelines.[4]     Even   if
Milner's ability to file his charge had been affected
during the shutdown, he still had sufficient time to file
his charge before the shutdown began, and the
approximately five-week shutdown through January 25,
2019, would in any event hardly excuse missing his filing
deadline by nearly three months, in late March 2019.

He also argues that equitable tolling should apply
because he "was informed that termination of his
employment was not final until October 26, 2018," when
his appeal ended.   Complaint (doc. no. 1) at ¶ 29.   In
response to the court's request for more information

_____

    4.   The court may take judicial notice of the EEOC's
statement regarding the functions it maintained during
the government shutdown under Federal Rule of Evidence
201(b)(2), because the EEOC's explanation of its own
operations is "not subject to reasonable dispute" and
"can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned."   Fed.
R. Evid. 201(b); *see also Wilding v. DNC Servs. Corp.*,
941 F.3d 1116, 1123 (11th Cir. 2019) (courts may take
judicial notice of "undisputed historical and political
fact"); *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d
1041, 1047-48 (11th Cir. 2019) (Carnes, C.J., concurring)
(courts may take judicial notice of agency records and
reports).

about this allegation, Milner clarified that he "was told by General Sams (Director of Public Safety) in a conversation in his office that my termination was not final until the appeal process was completed, and that if the appeal process was successful, my employment could possibly be fully reinstated."  Affidavit of Anthony Milner (doc. no. 20-1) at 2.

Equitable tolling is available "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).  But on the totality of the facts presented here, Milner's conversation with Sams is insufficient to meet this standard.  In particular, the evidence reflects that Milner retained counsel (at least by early December 2018, if not earlier) long before the deadline for filing his EEOC charge elapsed (in late December 2018 or early January 2019).  *See* Complaint (doc. no. 1) at ¶ 33. Milner was not "tricked by his adversary's misconduct" into letting the deadline slip by.  Sams's statement that

14

his firing was not "final" until the appeal concluded was a misstatement of the applicable law.  Milner's counsel should have known that Milner's appeal did not toll the deadline for his EEOC charge, and counsel had ample opportunity to correct whatever misunderstanding of the law Sams's statement caused before the filing deadline ran.  *See Jordan*, 283 F. App'x at 767-68 (finding that appeal of city employee did not toll EEOC charge-filing deadline even though supervisor incorrectly told employee that termination would not be effective until Montgomery personnel board had reviewed action).

As such, the circumstances of this case do not permit equitable tolling to rescue Milner's claims from the untimely filing of his charge with the EEOC.  When Milner's counsel encountered difficulty with the EEOC's online portal in the weeks before the filing deadline, he should have filed Milner's charge through one of the other filing methods available to him.  By not doing so, he failed to exercise diligence in prosecuting Milner's claim in at least one of two important ways: either by

15

miscalculating when the limitations period began to run, or by misunderstanding the possible ways of submitting an EEOC charge.  But while certain "serious instances of attorney misconduct" may constitute the extraordinary circumstances necessary for equitable tolling to apply, the Supreme Court has held that an attorney's miscalculation of deadlines presents instead a "garden variety claim of excusable neglect" and does not suffice. *Holland v. Florida*, 560 U.S. 631, 651-52 (2010) (quoting *Irwin*, 498 U.S. at 96).  For these reasons, Milner's claims under the ADA will be dismissed.

### B.  Section 1983 Claims

Milner also brings suit for the alleged ADA violations under 42 U.S.C. § 1983, which "generally supplies a remedy for the vindication of rights secured by federal statutes." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002).  But the Eleventh Circuit Court of Appeals has specifically held that plaintiffs are precluded from bringing suit under § 1983 "in lieu of--or

in addition to--a[n] ... ADA cause of action if the only
alleged deprivation is of the ... rights created by ...
the ADA." *Shotz v. City of Plantation*, 344 F.3d 1161,
1176-77 (11th Cir. 2003) (quoting *Holbrook v. City of
Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997))
(alterations in original). The "comprehensive
legislative scheme" of the ADA "foreclosed a remedy under
§ 1983." *Id.* at 1176 (quoting *Gonzaga*, 536 U.S. at 284
n.4). Because Milner's § 1983 claim simply reiterates
the ADA violations he alleges, *see* Complaint (doc. no.
1) at ¶ 56, it cannot proceed.

***

Accordingly, defendants' motion to dismiss will be
granted as to all claims in Milner's complaint, and this
suit will be dismissed with prejudice.

A separate judgment will be entered.

DONE, this the 21st day of January, 2021.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

17